IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JOHNNY MCMANUS                                                            PLAINTIFF

VS.                                                     CIVIL ACTION NO. 1:08CV113-SAA

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                           DEFENDANT

**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Johnny H. McManus, for a period of disability and disability insurance benefits (DIB) under Section 216(i) and 223 of the Social Security Act. Plaintiff applied for benefits on November 15, 2005, alleging that he became disabled on February 12, 2004. (Tr. 84). Plaintiff amended his onset date to July 20, 2005 during the hearing before the Administrative Law Judge [ALJ]. (Tr. 12, 27). The basis for his claims are a fracture of his left foot and ankle resulting from a fall, severe pain and decreased range of motion in his ankle and subtalar joints, degenerative joint disease, chronic low back pain, sleep apnea, numbness in his hips and lower extremities. (Tr. 105). His claim was denied initially and on reconsideration. He requested an administrative hearing which was held on December 12, 2007. The ALJ issued an unfavorable decision on January 24, 2008, and plaintiff properly filed a request for review with the Appeals Council. On May 3, 2008, the Appeals Council denied plaintiff's request for review. The plaintiff timely filed the instant

1

appeal which is now ripe for review.[1]

FACTS

The plaintiff was born on April 9, 1964, and has a twelfth grade education. (Tr. 111). He was forty-one years old at the time of his amended onset date. His past relevant work was in the construction industry as a supervisor/general laborer overseeing crews and participating in hanging vinyl siding on buildings, drywall applicator and delivery truck driver. (Tr. 46-48, 106-107). Plaintiff contends he became disabled in July 2005 due to a fractured ankle, obstructive sleep apnea and chronic back pain. (Tr. 105). Plaintiff was off work from his ankle injury in February 2004 until February 2005 when he returned to light duty work. *Id.* He was terminated in 2005 because of a vehicle accident and contends that he is unable to return to work at any level, including sedentary level work. *Id.*

The ALJ determined that the plaintiff suffered from "severe" impairments including spinal degenerative disc disease, status post fracture of the left ankle with post-traumatic arthritis, hypertension and obesity. (Tr. 14). Despite these impairments, the ALJ determined that the plaintiff did not have any impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003). (Tr. 15). The ALJ determined that the plaintiff retains the Residual Functional Capacity [RFC] to perform the exertional demands of sedentary level work, but that he "cannot be around hazardous moving machinery or perform jobs that require driving." (Tr. 15). Further, due to pain and medication side effects, "he is limited to simple job instruction and maintaining attention and concentration

---

[1]The parties have consented to trial before a magistrate judge, and the undersigned has authority to render judgment under the terms of 28 U.S.C. § 636(c)(1). Docket 10.

for 2-hour periods." *Id.*   Finally, the ALJ found that the plaintiff had was unable to perform any past relevant work, but that based on his age, education, work experience and residual functional capacity there are jobs that exist in the national economy that plaintiff can perform.  (Tr. 21). Consequently, the ALJ held that the plaintiff was not disabled under the Social Security Act.  (Tr. 21-22).

On appeal to this court plaintiff raises the following issues:

1. Whether the Commissioner erred by failing to properly evaluate the severity of all of plaintiff's medically determined impairments, resulting in a finding at Step Three that was contrary to the opinion of one of plaintiff's treating physicians and contrary to applicable laws; and

2. Whether the ALJ erred in assessing plaintiff's RFC resulting in a failure to sustain the Commissioner's burden at step 5 of the evaluation process.

Docket 13, p. 1.

## STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2]  The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[3] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[4]  Second, the plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or

---

[2]*See* 20 C.F.R. §§ 404.1520 (2003).

[3]*Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[4]20 C.F.R. §§ 404.1520(b) (2003).

3

mental ability to do basic work activities . . . ."[5] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[6] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[7] At step five the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[8] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work.[9]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must

---

[5] 20 C.F.R. §§ 404.1520 (2003).

[6] 20 C.F.R. § 404.1520(d) (2003). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525(2003).

[7] 20 C.F.R. §§ 404.1520(e) (2003).

[8] 20 C.F.R §§ 404.1520(f)(1) (2003).

[9] *Muse*, 925 F.2d at 789.

4

be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)).

At step two of the sequential evaluation process the ALJ concluded plaintiff's has spinal degenerative disc disease, status post-fracture of the left ankle with post-traumatic arthritis, hypertension and obesity. (Tr. 14). Nevertheless, at step three the ALJ found that the plaintiff's limitations did not meet or equal any impairment listed at 20 CFR pt. 404, subpt. P, app. 1 (2008). (Tr. 15). The ALJ reviewed the medical records as a whole, considered the credibility of the plaintiff's subjective complaints, engaged in a detailed discussion of the plaintiff's symptoms and factors considered in determining credibility, and appropriately reviewed the plaintiff's mental abilities. He determined that the plaintiff retains the RFC to perform the exertional demands of sedentary level work with non-exertional limitations relating to environmental factors, pain and side effects of medication. (Tr. 15-20). By utilizing the testimony of a vocational expert, the ALJ determined at Step Five of the sequential evaluation process that the plaintiff was capable of performing work that exists in significant number in the national economy and thus was not disabled under the Act. (Tr. 21)

## DISCUSSION

### Evaluation of all plaintiff's medically determinable impairments

Substantial evidence has been defined by the Fifth Circuit as "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing

5

*Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

The plaintiff argues that even though the ALJ found at Step Two that plaintiff had severe impairments of "spinal degenerative disc disease, status post fracture of the left ankle with post traumatic arthritis, hypertension and obesity," he failed to include other significant medically-determined impairments including plaintiff's depression/anxiety and several back or disc related diagnoses. Docket 13, pp. 9-10. Accordingly, plaintiff contends that the ALJ failed to consider *all* of his severe impairments, which led to a finding at Step Three that was unsupported by substantial evidence. *Id.* Specifically, plaintiff argues that the ALJ's finding that his "post traumatic arthritis of the left ankle residual to history of fracture, spinal disease and his obesity do not meet with the criteria of Listing 1.02" is contrary to the opinion of plaintiff's treating specialist, Dr. Tarquinio, in Tarquinio's medical source statement of September 2005. Docket 13, p. 10.

The ALJ's decision states:

> At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe

6

> impairment or combination of impairments, the analysis proceeds to the third step.
>
> At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

(Tr. 13). Thereafter, the ALJ concluded that the claimant had the severe impairments quoted above, but that none of these severe impairments, alone or in combination, met or equaled one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 15). In making this finding, the ALJ acknowledged medical evidence of plaintiff's upper and lower extremity neuropathy through EMG study evidence. He acknowledged plaintiff's depression but found it was non-severe under *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985) because there were no treatment notes or objective medical findings diagnosing depression, and plaintiff made no subjective complaints relating to depression. He also acknowledged medical evidence regarding plaintiff's spinal disease, but found that there was no radiographic evidence of nerve root involvement, no atrophy, loss of reflexes, motor loss and no evidence of positive straight leg raising in the supine and seated positions as required by Listing 1.04. (Tr. 14-15); 20 CFR Pt. 404, Subpt. P., App. 1, 1.04. After further discussion of plaintiff's severe impairments under Listing 1.02 and 4.01, the ALJ that there in insufficient evidence to show these severe impairments, alone or in combination, meet or equal the listings.

To establish a *prima facie* case of disability, the burden is on the plaintiff to show the existence of a severe impairment. Soc. Sec. LP § 41:3. Thus the plaintiff must show that he suffers from a "medically determinable" condition that causes some limitation on his ability to

7

perform basic work-related activities. 20 C.F.R. § 404.1520. It is important that the level of severity required for an impairment to meet the severity step at Step Two of the sequential evaluation process is different from the level of severity required to prove that an impairment meets or equals a listed impairment. Soc. Sec. LP § 41:4; 20 CFR Part 404, Subpt. P, Appendix 1. At Step Two, the required level of severity generally precludes performance of substantial gainful activity or ability to perform basic work related activities, while the level of severity required at Step Three prevents effective performance of *any* gainful work activity. *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 892 (1990).

With regard to determining severity of a plaintiff's impairment, the Fifth Circuit has held that "[t]he definition of 'severe' employed by the ALJ rests on current regulations stating that an impairment is not severe if it does not 'significantly limit [the claimant's] physical or mental ability to do basic work activities.'" *Hampton v. Bowen* 785 F.2d 1308, 1311 (5th Cir. 1986) (quoting 20 C.F.R. § 404.1520(c) (1985)). To ensure proper application of this standard, the Circuit has construed 20 CFR § 404.1520(c) as setting forth the following standard for non-severity:

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Estran v. Heckler,* 745 F.2d 340, 341 (5th Cir.1984). In *Stone v. Heckler*, the Court further clarified the Commissioner's burden to establish that an impairment is not severe,

> [W]e will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used.

8

> Unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration.

*Stone v. Heckler,* 752 F.2d 1099, 1106 (5th Cir.1985). Subsequently, the Fifth Circuit explained that remand in not required of all severity cases nor will a case be remanded simply because the ALJ did not utilize the "magic words" prescribed in *Stone.* *Hampton v. Bowen* 785 F.2d at 1311. Instead, remand will be required "only where there is no indication the ALJ applied the correct standard." *Id.*

Although the plaintiff argues that the ALJ overlooked his back problems and depression in assessing his severe impairments, upon reading the ALJ's decision, it is clear that these contentions are mistaken. In his decision the ALJ specifically considered the plaintiff's back problems detailing notes and findings related to the lumbar spine MRI of February 2005, the EMG study of March 2005, and the April 2006 EMG study and opinions of Dr. Victor Gray associated therewith. (Tr. 14, referencing Exhibits 8F, 12F and 17F). In light of the ALJ's attention to detail regarding plaintiff's medical records and clear consideration of all of the evidence, the court concludes that his determination relating to the severity finding for plaintiff's back problems was well reasoned and supported by substantial evidence.

> Regarding plaintiff's depression, the ALJ held,
>
> The claimant's depression is found to be a non-severe impairment(s) as it poses no more than a minimal impact on the claimant's ability to perform work-related activity (Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985)). Dr. Gray prescribed the claimant Zoloft in April 2002, but his treatment notes contained no diagnosis of depression. Additionally, there were no subjective complaints or objective medical findings of depression.

(Tr. 15). The plaintiff contends that the ALJ's failed to follow the proper procedure in assessing the severity of mental impairments under 20 CFR 404.1520a. However, where, as here, the

plaintiff did not claim depression as an impairment in his application or otherwise at the administrative level, and has pointed to no evidence indicating that depression affects his ability to work, then the ALJ's decision regarding plaintiff's depression as non-severe without the regulatory "special technique" is not in error. *See Domingue v. Barnhart* 388 F.3d 462, 463 (C.A.5 (La.),2004); *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir.1989). The ALJ reasonably considered and discussed his determination that plaintiff's depression is non-severe. The record does not reveal any objective medical findings or subjective evidence by the plaintiff that would establish existence of any limitation of plaintiff's ability to work due to depression. The court therefore concludes that the ALJ's determination was well reasoned and supported by substantial evidence despite the lack of procedural "special technique" for assessing mental impairments.

Plaintiff argues that based on the medical source statement questionnaire completed by plaintiff's treating specialist, Dr. Tarquinio, he meets the requirements for Listing 1.02 because he cannot "ambulate effectively." Docket 13, pp. 10-11. According to plaintiff, the ALJ's determination at Step Three of the evaluation process that plaintiff's "post traumatic arthritis of the left ankle residual to history of fracture, spinal disease, and his obesity do not meet with the criteria of Listing 1.02" is in direct contradiction with Dr. Tarquinio's opinion that the plaintiff's left ankle and left subtalar joints constitute a "major dysfunction of a joint. . . characterized by gross anatomical deformity," resulting in "chronic joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joints," including "joint space narrowing, bony destruction or ankylosis of the affected joint(s)," and that plaintiff has "involvement of one major weight bearing joint." (Tr. 218). Although the plaintiff is correct that

this opinion effectively outlines most of the necessary requirements to meet Listing 1.02,[10] when specifically asked about the plaintiff's ability to ambulate, Dr. Tarquinio found that plaintiff had the ability to walk without the use of a walker, two canes or two crutches, did not need a cane or other assistive device for balance, was able to use standard public transportation and was able to climb a few steps at a reasonable pace without use of a single hand rail. (Tr. 219 - 220). Further, when he was asked whether the plaintiff's impairments medically equaled Listing 1.02, he provided no response. *Id.* Although the ALJ did give significant weight to Dr. Tarquinio's opinion, he was not required to adopt all portions of it. *See* 20 CFR §404.1527(d); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) ("the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.").

The plaintiff's testimony and other evidence established that the plaintiff was released to "strictly non-weight bearing" sedentary work by Dr. Tarquinio on April 15, 2004, just six weeks

---

[10] Listing 1.02 states:

1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

after his surgery on his ankle. (Tr. 212). Dr. Tarquinio released plaintiff from his care with a permanent restriction to light duty work with no prolonged standing or walking. (Tr. 203). Plaintiff testified that he returned to work as a delivery driver, albeit in a restricted fashion, after his ankle injury but was terminated from his employment after he failed to report a minor accident. (Tr. 17). Thus, the plaintiff's own testimony contradicts both his assertion that he has an "extreme" limitation in his ability to ambulate effectively as well as Dr. Tarquinio's opinion that he would be unable to work due to severe pain and would miss work more than four times a month. Because the plaintiff's own testimony established he was able to perform work outside of the limitations imposed by Dr. Tarquinio, the ALJ was correct to only adopt portions of the Dr.'s opinion that were consistent with the evidence. Accordingly this claim, too, must fail.

ALJ's determination of plaintiff's RFC

At Step Four of the sequential evaluation the ALJ found that plaintiff retains the RFC to perform the exertional demands of sedentary level work, but that he "cannot be around hazardous moving machinery or perform jobs that require driving." (Tr. 15). Because of pain and medication side effects, "he is limited to simple job instruction and maintaining attention and concentration for 2-hour periods." *Id.* The ALJ made this finding after properly assessing the plaintiff's credibility according to applicable regulations and Social Security Rulings and considering all the medical evidence and the plaintiff's testimony. Significantly, the plaintiff testified at the hearing that he injured his left foot and ankle on February 12, 2004 when he fell off a building while installing vinyl siding. (Tr. 27). He subsequently returned to work driving a standard transmission delivery truck (Tr. 28). He drove the delivery truck for approximately eight months before he was terminated in July 2005 after he had a minor traffic accident while

12

driving the delivery truck. (Tr. 29-31). Although it is plaintiff's testimony that he was allowed significant work accommodations [such as driving the truck, but not loading or unloading the delivery items] while employed after injury to his left ankle and foot, there is no dispute that he was employed for some eight months as a delivery truck driver after his injury. Based on the record as a whole, the ALJ determined the plaintiff's RFC, found that he was unable to return to his past relevant work, and relying in part on the testimony of a vocational expert ("VE"), found that there was other work that exists in the national economy that the plaintiff can perform. (Tr. 21). Thus, the ALJ concluded that the plaintiff was not disabled under the Act. *Id.*

The plaintiff argues that the ALJ's finding was in error because he failed to give proper consideration to "ALL of [plaintiff's] medically-determined severe impairments, including his depression/anxiety, the disc herniation at L1-2, the disc buldge at L-5-S1, the moderate peripheral polyneuropathy and chronic moderate lumbosacral cervical radiculopathy," in combination with plaintiff's symptoms and other complaints and limitations. Docket 13, pp. 13-14. As previously noted, however, the ALJ did consider the plaintiff's impairments including his back problems, subjective complaints, symptoms, other evidence such as testimony of his activities of daily living and evidence relating to his abilities from a third-party function form completed by Sybil McManus, plaintiff's mother. (Tr. 147 - 155).

The ALJ's decision acknowledged plaintiff's complaints of back problems, depression and pain and demonstrated his familiarity with the plaintiff's medical records and complaints, as outlined above; he nevertheless concluded that plaintiff's back problems, depression, or other subjective complaints were not impairments that would impede his ability to work. The ALJ's finding that the plaintiff has the RFC to perform the exertional demands of sedentary level work

13

with specific non-exertional limitations is consistent with, yet more restrictive than Dr. Tarquinio's release of plaintiff on June 13, 2005 to "permanent light duty with no climbing and no prolonged standing or walking," in that it accounts for more of plaintiff's subjective complaints and other limitations than did Dr. Tarquinio. (Tr. 203). The ALJ's RFC is also consistent with the recommendations outlined in the September 2007 report and medical source statement of Dr. Martin Pomphrey, Jr., a DDS examining physician. Finally, the testimony of the plaintiff and the evidence in the record establishes that the plaintiff was able to successfully perform and maintain work for a period of time just prior to his onset date in July 2005. The evidence does not reveal, nor does the plaintiff point to evidence to establish that he was not capable of performing work as indicated by the ALJ's RFC.

In all social security cases, the plaintiff bears the ultimate burden of proof on the issue of disability. *Kraemer v. Sullivan*, 885 F.2d 206, 204 (5th Cir. 1989). Under the Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). After properly making a determination of the plaintiff's RFC, and based on the testimony of a VE at the hearing, the ALJ found at Step Four that the plaintiff was not capable of returning to his past relevant work . (Tr. 20). The ALJ then analyzed all of the information contained the record, using the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2 as a framework for decision-making; relying on the testimony of the VE, and in accordance all applicable rules and regulations, the ALJ determined that the plaintiff is capable of making a successful adjustment to other work that exists in the national economy.

(Tr. 21). Finally, the ALJ made a determination that the plaintiff is not under a disability as defined by the Act. *Id.* The court is unable to hold that his determination was in error.

"Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders,* 914 F.2d at 617. Courts should strive for "judicial review [that is] deferential without being so obsequious as to be meaningless." *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986). In this case, the requisite "substantial evidence" is clearly contained in the record to support the Commissioner's decision. The ALJ's decision must be affirmed.

## CONCLUSION

In accordance with this memorandum opinion, the decision of the ALJ is affirmed. A final judgment will issue this day.

THIS, the 21st day of December, 2009.

    /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE